UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES D. WHITE and<br>BRENDA WHITE, | )<br>)<br>) | CIV. 06-4272-KES |
| Plaintiffs, | )<br>) | |
| vs. | )<br>)<br>) | ORDER GRANTING<br>IN PART AND DENYING<br>IN PART MOTION TO<br>COMPEL |
| COOPER INDUSTRIES, INC.,<br>a/k/a Cooper Industries, Ltd.<br>and COOPER TOOLS, INC., | )<br>)<br>) | |
| Defendants | )<br>) | |

Defendants, Cooper Industries, Inc., a/k/a Cooper Industries, Ltd., and Cooper Tools, Inc., move to compel plaintiffs, James and Brenda White, to provide discovery regarding testing done on evidence material to this litigation. Plaintiffs oppose the motion. The motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

Plaintiffs' complaint, filed on November 21, 2006, alleges that James White was injured while repairing a forklift on February 19, 2004, while he was an employee at Herc-U-Lift mechanics. White suspended the fork carriage assembly of the forklift with a 3/8" x 16' Grade 43 welded eye grab hook binder (the chain). The chain consisted of approximately 160 links, connected at each end to a hook. While the assembly was suspended, White worked underneath the assembly. Approximately twenty minutes after White

began working, two links of the chain broke and the assembly fell onto White, causing injury to his abdomen, pelvis, and legs.

Defendants assert that from 2004 until March 2008, the chain was under plaintiffs' custody and control. Defendants allege that during that time, plaintiffs utilized the services of Anamet, Inc., Micron, Inc., and Dr. Douglas Townsend, to conduct testing on the chain. Plaintiffs also retained Les Engel, a metallurgical engineer, to serve as a testifying expert.

Defendants deposed Engel, who testified that he conducted a number of tests on the chain. Engel also testified that he was aware that previous testing had been done on the chain by Anamet, Micron, and Dr. Townsend. The previous testing included "hardness testing." Engel testified that hardness testing is performed with a small indenter, which is forced into the surface being tested. Docket 34, Ex. F at 31-32. Engel also testified that Micron had cut out a section of a link of the chain for testing. Id. at 76, 94.

Following Engel's deposition, plaintiffs served Anamet, Micron, and Dr. Townsend with subpoenas *duces tecum*, seeking documents related to the testing those entities had performed on the chain. Micron responded to the subpoena, but plaintiffs' counsel objected to the subpoenas prior to Anamet or Dr. Townsend's response and identified Anamet and Dr. Townsend as nontestifying experts.

Defendants argue that plaintiffs conducted destructive testing on the chain, and that defendants are therefore entitled to discover the methods and results of that testing. Further, defendants argue that the exceptional

circumstances of this case justify the discovery of Anamet's and Dr. Townsend's files and opinions relating to the chain. Docket 33 at 10. Defendants further assert that Anamet and Dr. Townsend should be designated as fact witnesses. Plaintiffs allege that they have provided discovery as required by the rules, and argue that Anamet and Dr. Townsend's opinions are protected by Fed. R. Civ. P. 26(b)(4)(B).

## DISCUSSION

In their motion to compel, defendants argue the court should order the production of the files of Anamet and Dr. Townsend.[1] Defendants also assert that they are entitled to the opinions of Anamet and Dr. Townsend because they relate to the chain. Plaintiffs argue that the files are not discoverable because Anamet and Dr. Townsend are nontestifying expert witnesses.

Rule 26(b)(4)(B) states:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

---

[1]In defendants' memorandum in support of their motion to compel, defendants' heading numbered III reads "The Court Should Compel Production of Anamet's and *Micron's* Files". Docket 33 at 7 (emphasis added). The argument contained within that section, however, refers to Anamet and *Dr. Townsend*. See, e.g., id. at 8 ("Anamet and Townsend have performed destructive testing . . ."); id. at 10 ("exceptional circumstances justifying discovery of Anamet's and Dr. Townsend's files . . ."). Defendants previously acknowledged that Micron complied with defendants' subpoena. Id. at 4. It appears to the court, therefore, that defendants' use of Micron in the heading was a typographical error. Accordingly, the court will substitute Dr. Townsend for Micron in its reading of that heading.

. . .

>(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Defendants do not contest that Anamet and Dr. Townsend are nontestifying experts pursuant to Rule 26(b)(4)(B). Rather, defendants argue that because Anamet and Dr. Townsend engaged in destructive testing, this case presents exceptional circumstances under which it is appropriate for the court to order that defendants be allowed to discover facts and opinions within the knowledge of the experts.

Defendants' primary contention is that they have "been denied an opportunity to examine the chain in the state it existed when the accident occurred four years ago." Docket 33 at 9. The court agrees that defendants must be allowed to conduct an examination of the chain, and it would violate both the language and the spirt of the discovery rules if plaintiffs failed to reveal the results of testing that cannot be replicated by defendants. See, e.g., Cooper v. United Vaccines, Inc., 117 F. Supp. 2d 864, 874-75 (E.D. Wis. 2000) (finding that plaintiff's "intentional, destructive, *ex parte* testing" provided an alternative basis for dismissal of the claims). Nonetheless, the court must first examine the conduct of plaintiffs before determining the appropriate remedy.

4

### A. Cutting Away of Link #57

Defendants contend that plaintiffs' experts performed two types of destructive testing, namely: the removal of a portion of one of the links of the chain[2] for further examination and hardness testing. With respect to Link #57, defendants contend that Micron, at the request of Dr. Townsend, cut out a section of the link for testing. The link was tested by Micron, which complied with defendants' subpoena and disclosed the results of the test. See Docket 41, Ex. 8 at 5-12. Docket 33 at 4. Defendants' expert indicated that Link #57 was an "unfailed link." Docket 41, Ex. 10 at 3.

The court finds that defendants' characterization of Micron's testing of Link #57 as "destructive testing of material evidence, conducted without notice to the opposing party and without opportunity to participate in the testing" overstates the significance of plaintiffs' actions. Docket 33 at 8. Micron's testing was conducted on one of the links that did not fail, and the results of the testing were turned over to plaintiffs. See Docket 41, Ex. 10 at 3. Additionally, the remainder of Link #57 was turned over to defendants. See Docket 34, Ex. C at 2.

Engel's testimony indicated that Micron's testing of Link #57 was conducted at the behest of Dr. Townsend. Docket 34, Ex. F at 5. In a letter

---

[2]Defendants' expert identifies the link that was cut for testing purposes as Link #57. Docket 34, Ex. C at 2. For purposes of this order, the court will adopt defendants' numbering of that link.

5

to plaintiffs' counsel, Dr. Townsend summarized his involvement in the case:

> On January 31, 2005, I examined plastic replicas of fracture surfaces of the chain involved in an accident in which Mr. White was injured at Micron, Inc. laboratories at 3815 Lancaster Picke, Wilmington, Delaware, 19805. A transverse cross section was cut out of a chain link mounted in plastic, ground, polished and etched using nital. The metallurgical structure of the chain link was photographed at 100, 250, 500, and 1,000 diameters magnification. The chain link cross section was placed in a scanning electron microscope and an electron diffraction x-ray analysis was obtained.
>
> The Rockwell C Hardness was determined to be 27.
>
> I sent the chain to your office by FedEx Ground on May 11, 2005. A copy of the shipping paper is enclosed.
>
> I have had no further involvement with this case.

Docket 41, Ex. 8 at 12.

The court agrees with the general proposition that parties should consult with each other prior to any testing which alters material evidence. In this case, however, the testing done by Micron was conducted prior to the initiation of this suit and therefore prior to defendants' involvement as parties. The court recognizes that in some situations a plaintiff could purposefully delay filing a lawsuit in order to conduct testing without involving another party. The court does not find that this is such a situation, however, based upon the minimal destruction of only one of the

6

unfailed links in the chain, as well as the preservation of Link #57 and the disclosure of the evidence derived from the testing.

Defendants do not assert that Micron failed to provide relevant evidence through discovery regarding its testing and in fact, defendants' expert was able to use the test results from Micron in forming his opinion. See Docket 41, Ex. 10 at 3.  Further, Link #57 was provided to defendants. It appears that testing done by Dr. Townsend was the same testing done by Micron, and that Anamet was not involved in the testing of Link #57. Accordingly, the court does not find that plaintiffs have failed to disclose any of the facts in their knowledge with respect to the testing of Link #57.  Even if some information has not been disclosed, however, defendants have not asserted that they are unable to conduct identical testing on Link #57 or any of the other remaining unfailed links.

Under these circumstances, the court finds that defendants have not demonstrated "exceptional circumstances" under Rule 26(b)(4)(B) to discover any additional facts regarding the testing of the Link #57.  Further, because defendants have in their possession, or have access to all data that plaintiffs' nontestifying experts obtained from that testing, defendants have not demonstrated "exceptional circumstances" to compel this court to order the disclosure of the opinions of the nontestifying experts regarding Link #57.  There is no reason defendants' own experts cannot examine the data

and reach an independent conclusion. This finding is consistent with one of the recognized goals of Rule 26(b)(4)(B), to prevent the "unfairness of allowing an opposing party to benefit from a party's effort and expense incurred in preparing its case[.]" House v. Combined Ins. Co. of America, 168 F.R.D. 236, 241 (N.D. Iowa 1996). Accordingly, defendants' motion to compel, with respect to the testing of Link #57 and opinions derived from that testing, is denied.

### B. Hardness Testing

The second "destructive testing" complained of by defendants is hardness testing.[3] As discussed above, hardness testing does slightly alter the tested material. Defendants' brief indicates that some hardness testing was performed on the chain, but does not indicate the location of that testing. Docket 33 at 4. Testing done by one of defendants' expert indicates that hardness tests were performed on both failed links. Docket 41, Ex. 10 at 3. The record also indicates that other hardness testing may have been performed, but those results were not provided to defendants. Id. It is not clear whether the other testing was conducted on the failed links or on unfailed links contained in the chain.

---

[3]The letter from Dr. Townsend indicates that he was not involved in any hardness testing beyond that conducted on Link #57. As discussed above, the results of that testing were disclosed and therefore the court will not discuss that testing further.

It appears from the record that defendants have received the results of the hardness testing on the failed links.  See Docket 34, Ex. C at 3.  But because of the limited ability of defendants to conduct their own testing of the failed links, the court finds that defendants have demonstrated "exceptional circumstances" to justify the discovery of that testing.  Accordingly, if plaintiffs have not disclosed all of the results of that testing, the court orders they must do so.

Additionally, defendants may not have received the results of the testing on other unfailed links.  This testing can likely be replicated by defendant on other unfailed links remaining in the chain.  Nonetheless, because defendants were not involved in the initial testing, the court finds in this instance that defendants have demonstrated "exceptional circumstances" to allow them to discover which other unfailed links plaintiffs conducted hardness testing on, and the results of those tests.  Plaintiffs have made no showing that the disclosure of this information would cause them prejudice.  See Moore U.S.A. Inc. v. Standard Register Company, 206 F.R.D. 72 (W.D.N.Y., 2001) (holding that 26(b)(4)(B) shields discovery in part because the discovery would disclose the methods employed by the nontestifying experts, thus providing insight into the plaintiff's litigation strategy and theory of the case).

Once the testing data discussed above has been discovered by defendants, defendants will have the same data possessed by plaintiffs' nontestifying experts, and they will be able to obtain their own expert opinions based on that data. Defendants' motion to discover the opinions of plaintiffs' nontestifying experts with respect to the remainder of the chain is therefore denied for the same reasons discussed above regarding Link #57.

## CONCLUSION

The record reflects that plaintiffs, through their testing of the chain, did in some ways alter the condition of the chain. Because defendants did not have an opportunity to examine the chain in its original condition, the court finds that there are "exceptional circumstances" to allow defendants to discover the nature of the destructive testing done on the chain and the results of that testing. Accordingly, plaintiffs must comply with defendants' discovery requests to the extent necessary to provide that information.

Based on the foregoing, it is hereby

ORDERED that defendants' motion to compel (Docket 31) is granted in part and denied in part as set forth in this order.

Dated August 6, 2008.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                CHIEF JUDGE