UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES D. WHITE and BRENDA WHITE, | ) ) ) | CIV. 06-4272-KES |
| Plaintiffs, | ) ) | ORDER ON MOTIONS IN LIMINE |
| vs. | ) ) | |
| COOPER TOOLS, INC., | ) ) | |
| Defendant. | ) | |

In this products liability case, plaintiffs, James D. White (James) and Brenda White (Brenda), allege that James was injured as a result of a manufacturing defect in a 3/8" x 16' Grade 43 chain manufactured by defendant, Cooper Tools, Inc. On February 19, 2004, while working as a forklift mechanic at Herc-U-Lift, James used the chain to secure the carriage assembly of a forklift so that he could repair the cylinder underneath the carriage assembly. While James was working underneath the suspended carriage assembly, two links of the chain broke, and the carriage assembly fell onto James, causing injury to his abdomen, pelvis, and legs. Plaintiffs sued defendant, alleging strict liability in tort and loss of consortium.

Pending before the court are the parties' motions in limine. At a pretrial conference held on July 31, 2009, the court ruled on several motions in limine

and took several others under advisement.[1]  Now the court considers the motions in limine that were not ruled on during the pretrial conference.

I.  **Defendant's Motions in Limine (Docket 96)**

   A.  **No. 1–Dissimilar Incidents**

   Defendant moves to prohibit plaintiffs, their counsel, and any witnesses from presenting arguments or evidence relating to dissimilar incidents of chain breakages.  Plaintiffs indicate that they have no objection as long as defendants do not present evidence of the absence of other chain breakages.  Defendant states that it does not intend to introduce such evidence.  Based on the rationale stated during the pretrial conference, defendant's motion is granted.

   B.  **No. 6–Testimony of Undisclosed Expert Witnesses**

   Defendant moves to prohibit plaintiffs from presenting the testimony of undisclosed expert witnesses.  Plaintiffs argue that their expert witness, Lester B. Engel, should be able to offer rebuttal testimony based on testing performed by Dr. Dana Medlin.  For the reasons stated during the pretrial conference, defendant's motion is denied and plaintiffs shall disclose Dr. Medlin's testing to defendant.

---

[1] The Honorable Lawrence L. Piersol presided over the pretrial conference.  After the pretrial conference, the trial was continued, and the case was transferred to the undersigned.

### C.     No. 8–Fulbright & Jaworski, LLP

Defendant moves to preclude plaintiffs, their counsel, and any witnesses from mentioning defendant's decision not to use Fulbright & Jaworski, LLP as trial counsel. After a break in the pretrial conference, defendant indicated that the parties reached an agreement on this motion. As a result, and based on the rationale stated during the pretrial conference, defendant's motion is denied.

### D.     No. 14–Caption

Defendant moves to confine the caption and evidence to Cooper Tools, Inc., and not Cooper Industries, Inc. or Cooper Industries, Ltd. Based on the rationale stated during the pretrial conference, defendant's motion is granted and the caption will be so amended.

### E.     No. 16–Get Well Cards

Defendant moves to prohibit plaintiffs, their counsel, and all witnesses from mentioning any "get well" cards received by James after the accident. Based on the rationale stated at the pretrial conference, defendant's motion is denied. Plaintiffs shall disclose to defendant any cards they intend to introduce into evidence, and defendant shall bring any objections to the court's attention prior to trial. The court will rule on the relevance and admissibility of any testimony regarding well-wishes at trial.

### F. No. 17–Loss of Spousal Income

Defendant moves to prohibit plaintiffs, their counsel, and any witnesses from presenting arguments or statements regarding loss of spousal income as a component of Brenda's loss of consortium claim. Plaintiffs indicate that they do not intend to make a claim for Brenda's lost income or loss of earning capacity. Based on the rationale stated during the pretrial conference, defendant's motion is granted in part and denied in part. Brenda will be allowed to testify about the time she spent caring for James and working with contractors to remodel their home to accommodate James's injuries to the extent these matters are relevant to Brenda's loss of consortium claim.

## II. Plaintiffs' Motions in Limine (Docket 105)

### A. No. 1–Wear and Tear

Plaintiffs move to preclude defendant from arguing that the chain at issue had excessive wear and tear and should have been taken out of service prior to the date of injury. Based on the rationale stated at the pretrial conference, plaintiffs' motion is granted in part and denied in part. Defendant will be allowed to present evidence that the chain showed wear and tear but will not be allowed to present evidence that the chain should have been taken out of service.

### B. No. 6–Assumption of the Risk

Plaintiffs move to preclude defendant from arguing that James assumed the risk of injury. "It is well established in South Dakota that assumption of

the risk is a defense to a claim of strict products liability." Wangsness v. Builders Cashway, Inc., Nos. 24921, 24930, 25062, __ N.W.2d __, 2010 WL 457356, at *3 (S.D. 2010) (citing Berg v. Sukup Mfg. Co., 355 N.W.2d 833, 835 (S.D. 1984)). "A plaintiff assumes the risk when he is 'aware the product is defective, knows the defect makes the product unreasonably dangerous, has reasonable opportunity to elect whether to expose himself to the danger, and nevertheless proceeds to make use of the product.' " Id. (quoting Smith v. Smith, 278 N.W.2d 155, 161 (S.D. 1979)). "A person is deemed to have appreciated the risk if it is the type of risk that no adult of average intelligence can deny." Id. (internal quotation omitted). Under South Dakota law, "[t]he plaintiff must have knowledge of the specific defect and risk posed rather than simple generalized knowledge that he has entered a zone of danger." Id. (citing Novak v. Navistar Int'l Transp. Corp., 46 F.3d 844, 848-49 (8th Cir. 1995)).

Plaintiffs argue that defendant should be precluded from suggesting that James assumed the risk of injury because defendant denies that the chain was defective and James cannot be deemed to have actual or constructive knowledge of a defect that does not exist. The court need not determine at this time whether defendant is barred from asserting the alternative defenses that the chain was not defective and, if it was, that James assumed the risk of injury at this stage.² This question will not come up unless defendant has

---

² Defendant cites Holt v. Deere & Co., 24 F.3d 1289, 1296 (10th Cir. 1994), for the proposition that a manufacturer is free to assert the alternative

presented sufficient evidence to submit the issue of assumption of the risk to the jury.

It is clear that under South Dakota law, to prevail on its assumption of the risk defense in this strict liability case, defendant must show that James was aware of a specific defect in the chain, had reasonable opportunity to decide whether to expose himself to this danger, and nevertheless used the chain. See Wangsness, 2010 WL 457356, at *3; Smith, 278 N.W.2d at 161; Novak, 46 F.3d at 849 (finding that under South Dakota law, plaintiff is entitled to instruction that he must have discovered the defect and been aware of the danger to be barred from recovery). Defendant has provided evidence that James understood that using a defective chain put his life at risk. But the court cannot determine whether this evidence is sufficient to support an assumption of the risk instruction before hearing all of the evidence at trial. And assumption of the risk is normally a question of fact for the jury. Berg, 355 N.W.2d at 835. Thus, the court cannot conclude at this stage that defendant is precluded from arguing that James assumed the risk of injury. Plaintiffs' motion in limine is denied.

---

defenses that its product is not defective and, assuming that the product is defective, that the plaintiff knew of the dangerous condition and voluntarily assumed the risk. Holt applied Oklahoma law and therefore is not binding on this court.

## C. No. 5–Misuse

Plaintiffs also move to preclude defendant from arguing that the chain was misused. Misuse, or "use of the product in a manner or purpose other than that for which it was manufactured," is a defense to a strict liability claim. Smith, 278 N.W.2d at 161. "Misuse may involve using a product for an unintended function or using the product for its intended purpose but in an improper manner." Peterson v. Safway Steel Scaffolds Co., 400 N.W.2d 909, 913 (S.D. 1987). "In order for a defendant to prevail on this affirmative defense, it must prove . . . that plaintiff's conduct constituted a misuse, that this misuse was unforeseeable, and that this unforeseeable misuse legally caused the accident." South Dakota Pattern Jury Instructions: Civil, § 20-120-60 (2008 ed.); see also Peterson, 400 N.W.2d at 913 ("A manufacturer may be held liable where the misuse by the customer was reasonably foreseeable.").

The court cannot determine whether defendant is entitled to have the defense of misuse submitted to the jury at this stage. Defendant argues that it has evidence that James used the chain in an improper manner because he did not use a second chain or another device to secure the carriage assembly. But the court cannot determine whether this evidence is sufficient to submit the misuse defense to the jury before hearing all of the evidence at trial. Moreover, whether James's use of the chain constituted "misuse" and whether this misuse was reasonably foreseeable are questions of fact for the jury. See

7

Peterson, 400 N.W.2d at 913 ("Whether the use or misuse was reasonably foreseeable is ultimately a jury question.") (internal quotation omitted).

Moreover, plaintiffs' argument that defendant cannot assert the misuse defense because James followed the instructions of his employer in securing the forklift carriage assembly with a single chain is unavailing. There is nothing in South Dakota law that suggests that the plaintiff himself must have made the decision to use the product for an unintended function or in an unintended manner for the misuse defense to defeat strict liability. Indeed, in Peterson, 400 N.W.2d at 913, the Supreme Court of South Dakota discussed the misuse defense in a case where the plaintiff's co-worker secured the scaffolding equipment and clamp in a manner alleged to be unforeseeably improper. The court did not address the issue of who made the decision to use the product in an improper manner, but rather focused on the foreseeability of the misuse: "[i]nstead of imputing knowledge of all potential misuses of the product, when a misuse occurs it becomes a question of whether there was 'reason to anticipate' or if it was 'foreseeable.'" Id. See also McCormick v. Bucyrus-Erie Co., 400 N.E.2d 1009, 1015 (Ill. App. Ct. 1980) ("We would note, additionally, that both misuse by a plaintiff, the more usual case, and misuse by a third party can defeat a strict liability action. This is so where it is found that it was such misuse of the product, and not any dangerous condition of the product, which cased the injuries to a plaintiff."). Thus, the court concludes

8

that the Supreme Court of South Dakota would not limit the misuse defense to cases where the plaintiff himself, rather than a co-worker or his employer, took the action, made the decision, or adopted the policy to use the product in the allegedly improper manner. Plaintiffs' motion in limine is denied.

### D. No. 2–Forklift Manual Recommendation

Plaintiffs move to preclude defendant from arguing that the forklift manual recommends using two chains to restrain the forklift mast when repairing the forklift cylinder. Plaintiffs argue that this evidence is inadmissible because it constitutes evidence of James's contributory negligence, which is not a defense to a strict liability claim. Plaintiffs point to the language of the Restatement (Second) of Torts that "[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." See Restatement (Second) of Torts § 402A cmt. n (1965). Defendant asserts that the forklift manual's recommendation is relevant to explain defendant's dynamic loading theory of how the chain failed, to rebut plaintiffs' theory that James did everything he had been instructed to do the day of the accident and that his conduct was in conformity with the way mechanics use chains to secure forklifts, and to show James's knowledge, understanding, and appreciation of the risk of chaining the forklift in a manner that can create an overload for the purposes of defendant's assumption of the risk defense.

The court finds that the forklift manual's recommendation may be relevant to show that the chain failed due to overloading rather than as a result of a defect in the chain. Defendant asserts that the manual will help defendant explain how a forklift carriage assembly should be chained to prevent the assembly from collapsing onto the chain. This explanation is relevant to the issue of causation. Plaintiffs argue that James is not required to guard against the possibility of a defect in the chain, so that the evidence that he should have used a second chain as a "back up" is inadmissible. But South Dakota law does not prohibit a defendant from introducing evidence of a plaintiff's actions to rebut causation.[3] Further, the Restatement language stating that the

---

[3] Plaintiffs cite two cases applying Pennsylvania law for the proposition that evidence of a plaintiff's contributory negligence is not admissible in a strict liability action. See Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir. 1992) (applying Pennsylvania law); Childers v. Power Line Equip. Rentals, Inc., 681 A.2d 201(Pa. Super. Ct. 1996). As Dillinger explains, Pennsylvania courts have adopted a very strict standard of liability in strict liability cases and have rejected the introduction of any negligence concepts into this type of case. Dillinger, 959 F.2d at 436 ("In the Supreme Court's view, 'the term "unreasonably dangerous" has no place in the instructions to a jury as to the question of "defect" in this type of case' because it improperly introduces negligence concepts into the proceeding." (quoting Azzarello v. Black Bros. Co., 391 A.2d 1020,1027 (Pa. 1978)). The Supreme Court of South Dakota has not taken the same approach. See Peterson, 400 N.W.2d at 913 ("The issues of 'unreasonably dangerous' under Section 402A and 'foreseeable misuse' are an introduction of negligence concepts to strict liability theory. However, a manufacturer or seller is not an insurer, and so there is a standard by which the value in a product is compared with the level of dangerousness it may possess. There is also a standard to determine what types of misuse the consumer public would find to be foreseeable."). Because Dillinger and Childers were based on the Supreme Court of Pennsylvania's theory of strict liability, and the contours of this theory are different in South Dakota, Dillinger's and Childers' holdings that evidence of the plaintiff's contributory

10

plaintiff does not have a duty to guard against the possibility of the existence of a defect does not render defendant's proposed testimony inadmissible. Under defendant's theory of the case, James improperly used the chain to secure the carriage assembly, and this improper use allowed the carriage assembly to fall onto the chain with sufficient force to break the chain. Defendant does not argue that James failed to guard against the possibility of a defect in the chain to prevent an accident that might result from such a defect. Rather, defendant argues that James's conduct in securing the chain was the sole reason the chain failed. The evidence that the forklift manual recommended securing the carriage assembly in a certain manner may be relevant to help explain how a dynamic force can be created and, as a result, to rebut plaintiffs' argument that there was an unidentified defect in the chain and that this defect caused the accident.

The forklift manual's recommendation may also be relevant to rebut plaintiffs' theory of the case. Plaintiffs have argued that James's decision to use a single chain to secure the carriage assembly was consistent with the practices of forklift mechanics at Herc-U-Lift and throughout the field. The forklift manual's recommendation that mechanics use two chains or another method to secure the carriage assembly is relevant to rebut plaintiffs' assertion. If plaintiffs present evidence at trial that James acted in accordance with the

---

negligence is inadmissible to show lack of causation is not persuasive in this case.

practices of all forklift mechanics in securing the carriage assembly with a single chain, they may open the door to the challenged evidence.

Defendant also asserts that the forklift manual's recommendation is relevant to assumption of the risk. The court has serious reservations that this evidence is admissible to show assumption of the risk. As noted, under South Dakota law, plaintiff must have knowledge of the specific defect and risk posed by the product rather than generalized knowledge that he has entered a zone of danger. Wangsness, 2010 WL 457356, at *3. The court is unsure how the forklift manual provides evidence that James knew of a specific defect and risk involved in using the chain. The forklift manual may, however, be relevant to the issues of whether James's use of the chain constituted an unforeseeable misuse and whether this misuse caused the accident.

Plaintiffs' motion in limine to exclude evidence that the forklift manual recommends using two chains to restrain the forklift mast when repairing the forklift cylinder is denied. This evidence may be relevant to rebut plaintiffs' theory of the case, and there is no indication that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue

delay, waste of time, or needless presentation of cumulative evidence.[4] See Fed. R. Evid. 403.

### E. No. 3–Subsequent Remedial Measures by James's Employer

Plaintiffs move to preclude defendant from eliciting evidence that James's employer took subsequent remedial measures to prevent the occurrence of a similar accident. Under Rule 407 of the Federal Rules of Evidence,

> [w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

Rule 407 applies to evidence that James's employer took subsequent remedial measures. As a result of James's accident, Herc-U-Lift now instructs its mechanics to use two chains or a chain and a block to restrain forklift carriages. This is a measure that, if taken before James's accident, would have made the accident less likely to occur. Defendant seeks to offer this evidence to rebut James's assertion that he did everything right on the morning of the

---

[4] Plaintiffs have proposed a jury instruction stating that the contributory negligence of James, if any, is not a defense to his strict liability claim. This instruction would cure any prejudice or confusion created by the introduction of evidence that may indicate that James acted negligently the morning of the accident.

13

accident and to show that James's conduct in using a single chain to secure the carriage assembly caused the accident. This purpose falls under the "culpable conduct" language of Rule 407. Thus, under the language of Rule 407, evidence that Herc-U-Lift modified its procedure for securing a forklift carriage assembly after James's accident is not admissible to prove that James was culpable in the accident for the purposes of negating proximate cause, proving assumption of the risk, or proving misuse.

Applying the exclusionary rule in this case also promotes the public policy of Rule 407. The advisory committee's notes to Rule 407 indicate that the rule of exclusion of evidence of subsequent remedial measures "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules. Applying Rule 407 in favor of plaintiffs and excluding evidence that Herc-U-Lift took additional safety measures after James's accident would promote the policy of encouraging, or at least not discouraging, people to take steps in furtherance of added safety.

Defendant argues that Rule 407 does not apply to subsequent remedial measures taken by persons other than the defendant. Nothing in Rule 407 or the advisory committee's notes supports such a restrictive reading of the rule. Rule 407 refers to "measures . . . that, if taken previously, would have made the injury or harm less likely to occur." Rule 407 does not restrict such

14

measures to those taken by defendants.[5]  Rule 407 also states that this evidence is not admissible to prove negligence, culpable conduct, defect, or need for a warning or instruction.  Evidence of subsequent remedial measures by actors other than defendant may be relevant to these issues.  Further, the advisory committee's note refers to "people" in general, not to "defendants" in particular, and does not otherwise suggest that the public policy in favor of promoting safety measures only applies to persons named as defendants.  Thus, defendant's argument that Rule 407 does not apply to subsequent remedial measures taken by James's employer is unavailing.

In the absence of any indication that the evidence of subsequent remedial measures taken by Herc-U-Lift is relevant to show ownership, control, or feasibility of precautionary measures or for impeachment, this evidence is inadmissible under Rule 407.  Plaintiffs' motion in limine is granted.

### F.    No.7–Per Diem Argument

Plaintiffs move for permission to make a per diem argument.  Based on the rationale stated at the pretrial conference with respect to defendant's

---

[5] The Supreme Court of South Dakota's reasoning in Wangsness supports the court's conclusion that Rule 407 is not limited to measures taken by defendants.  In that case, the Supreme Court of South Dakota held that the trial court did not abuse its discretion in excluding evidence of subsequent remedial measures taken by the ***manufacturer*** of the product in a strict liability action against the ***seller*** of the product.  Wangsness, 2010 WL 457356, at *6.  Presumably, the court applied SDCL 19-12-9, which tracks the language of an earlier version of Rule 407.  Thus, the rule of exclusion for subsequent remedial measures is not limited to measures taken by the person named as a defendant in the case.

15

motion to preclude plaintiffs from making such an argument, plaintiffs' motion is granted.

Based on the court's oral order on July 31, 2009, and the foregoing, it is hereby

ORDERED that defendant's motions in limine (Docket 96) are granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiffs' motions in limine (Docket 105) are granted in part and denied in part.

Dated March 30, 2010.

        BY THE COURT:

        /s/ *Karen E. Schreier*
        KAREN E. SCHREIER
        CHIEF JUDGE