UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| JAMES D. WHITE and BRENDA WHITE, | \* \* \* | CIV. 06-4272 |
| Plaintiffs, | \* \* | |
| -vs- | \* \* | ORDER ON MOTION |
| COOPER TOOLS, INC., | \* \* \* | |
| Defendant. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is defendant's motion to compel (Doc. 145). Plaintiffs resist the motion. (Doc. 151).

**JURISDICTION**

The pending Motion was referred to the Magistrate Judge pursuant to Judge Schreier's Order of Referral dated March 16, 2010 (Doc. 148) and Judge Piersol's Standing Order dated November 29, 2006. A new Standing Order was filed by Chief Judge Karen Schreier on March 18, 2010.

**BACKGROUND**

Plaintiff James White was working on a forklift on February 19, 2004. He had secured the mast of the forklift with a chain Defendant manufactured. After about 20 minutes the chain suddenly snapped and the forklift forks fell, striking White and severely injuring him. Two broken chain links were found. Plaintiffs' expert, Les Engel, has identified the two chain links as SID 10314 and SID 10317. SID 10314 was the link on which Mr. White placed the hook to secure the load, and this link bent on the side where the hook was attached and subsequently broke.

Engel performed non-destructive hardness testing on SID 10314 and determined the hardness was within normal limits. The fracture surfaces of SID 10314 were also examined and appeared to be consistent with a ductile shear fracture. The weight of the forklift mast, however, was less than one-half the workload capacity of the chain. This led Engel to conclude the link was defective but that the defect simply could not be identified. On the other hand, Defendant's experts concluded that the link broke as a result of some sort of dynamic load. Defendant's experts dispute White's testimony that the chain was securely fastened and instead claim the chain must have had about 3 to 3½ feet of slack in it when the forklift mast fell and struck the chain, breaking it. Defendant believes the link does not have a manufacturing defect.

Plaintiffs consulted a non-testifying expert in preparation for trial, Dana Medlin, Ph.D., of the South Dakota School of Mines and Technology. Professor Medlin was interested in examining the fracture surfaces of the links using Scanning Electron Microscopy (SEM) and Energy Dispersive X-ray Spectroscopy (EDS). Plaintiffs sent him the links, but because of the size and shape of the links, it was difficult to position them for proper analysis. Professor Medlin went ahead with the examination shortly before the pretrial conference, and it indicated the presence of aluminum oxide inclusions.

The pretrial conference was held on July 31, 2009. Plaintiffs informed the Court and defendant that Professor Medlin's recent analysis revealed inclusions in SID 10317. Plaintiffs also informed the Court they anticipated using this information in rebuttal to refute Defendant's claims in regard to the way the incident occurred.

On September 27, 2009, the Court granted Defendant a continuance. June 22, 2010, is the current date to commence trial.

Defendant's counsel stated in an email on November 13, 2009, "we will want to test the other link, too." Plaintiffs' counsel stated they needed to visit with their experts and clients about the testing. The parties then discussed dates for the destructive testing on SID 10317 and subsequently conducted the agreed-upon destructive testing on December 1, 2009.

On February 1, 2010, Defendant wrote "we would like to complete some testing on the primary failed link" according to Standard Practice ASTM E45. Defendant followed up on this inquiry on February 16. Counsel spoke on February 18 and discussed the possibility of destructive testing on SID 10314. Because ASTM E45 provides no specific protocols, Plaintiffs wanted to know "where any proposed cuts will be made and what type of polishing, mounting and testing is proposed." Plaintiffs also stated, "we are not enthusiastic about cutting up the subject link because the bent link is the best evidence of the alleged defect." Defendant followed up with a more detailed explanation of the destructive testing on February 23. Defendant subsequently filed its motion to compel.

Defendant argues the testing would be performed pursuant to ASTM E45, which is a nationally recognized standardized test to determine the inclusion content of steel. A cross-section of the steel would be examined at high magnification and rated for its inclusion content. Inclusions were not an issue until Plaintiffs claimed at the pretrial conference that they had discovered "aluminum oxide inclusions" in one of the other links of the chain.

Plaintiffs argue the motion to compel is untimely and the destructive testing would destroy the best evidence of a manufacturing defect in the chain.

## DECISION

"A district court has very wide discretion in handling discovery and will generally not be reversed unless in the totality of the circumstances the district court's rulings are a gross abuse of

3

discretion resulting in fundamental unfairness. Orders by a district court denying or limiting discovery, therefore, will not be reversed unless there has been a clear abuse of discretion. *Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494, 498 ( 8th Cir. 1985).

Case precedent regarding destructive testing is not numerous, but ample and consistent in principle. There are two germinal cases and two often cited Eighth Circuit cases. *Petruk v. South Ferry Realty Co.*, 157 N.Y.S.2d 249 (1956); *Cameron v. the District Court In And For the First Judicial District*, 565 P.2d 925 (Co. 1977); *Dabney v. Montgomery Ward & Co., Inc.*, supra; *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417 (D. Mn. 1988). Another two cases are also instructive. *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Maryland 2006); *Conway v. Kaz Inc.*, 2009 WL 3698561(E.D. Mich. 2009).

In addition to establishing the balancing principles, *Cameron* makes the points that even as short a time as one month before trial for the motion to compel is not too late, and that destructive testing which will alter the appearance of critical evidence is not fatal to the motion to compel. *Cameron* at 929-930. Destructive testing ordinarily should not occur until after other testing has been completed. *Cameron* at 930.

The four factors which apply when deciding whether to allow destructive testing are:

(1)    whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case;

(2)    whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way;

(3)    whether there are any less prejudicial alternative methods to obtain the sought after evidence; and

(4)    whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Conway* at *2.

Metallurgical testing is commonly the subject for cases involving destructive testing disputes. See *Sarver v. Barrett Ace Hardware, Inc.*, 349 N.E.2d 28 (Ill. 1976) (holes drilled to remove a wedge from a hammer for metallurgic testing); *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Maryland 2006) (bolt permanently altered during metallurgical testing); *Cameron v. the District Court In And For the First Judicial District*, 565 P.2d 925 (Co. 1977) (a tire was tested to see whether internal metal strands of the tire had become separated).

In this case plaintiff opposes destructive testing because the disputed chain link itself, in plaintiffs' view, is their best evidence of a defect. That argument is not persuasive because it is beyond a layperson's knowledge to determine just by looking at a chain link whether the link is defective, i.e. it takes scientific, technical, or other specialized knowledge to explain why a chain link might break. F.R.E. 702. Plaintiffs' testifying expert has already formed his opinions. Plaintiffs' lawyers have represented to the court that they intend to introduce evidence at the trial which they secured from a non-testifying expert that the subject chain link is defective because "aluminum oxide inclusions" were discovered in one of the other links of the chain. The defense wishes to conduct the metallurgic testing to discover for themselves whether the assertion is true. Regarding factor (1) the proposed testing is reasonable, necessary, and relevant to prove the presence or absence of aluminum oxide inclusions in the subject chain link, i.e. to prove Cooper's claim the chain link is not defective.

Because plaintiffs' expert has already formed his opinions about SID 10314 plaintiffs will not be hindered from introducing evidence at trial that the chain link is defective if the destructive testing permanently alters the chain link. Additionally, the jury cannot determine for themselves by merely looking at the chain link without resort to expert opinion that the chain link is defective, so

permanently altering the chain link will not destroy evidence the jury needs to consider in order to make its decision. The before testing physical appearance of SID 10314 can be memorialized with photography, videography, or even making a clay model as the defense suggests. Regarding factor (2) plaintiffs' ability to present evidence at trial will be not be unreasonably hindered, and plaintiffs will not be prejudiced in some other way if destructive testing occurs.

It has not been suggested to the court that less intrusive than destructive testing can be accomplished to discover whether aluminum oxide inclusions are present or absent in the subject chain link. It has not been explained why plaintiffs' non-testifying expert concluded without destructive testing that aluminum oxide inclusions are present. Of course, if non-destructive testing can be used to discover whether aluminum oxide inclusions are present or absent, then non-destructive testing should occur rather than destructive testing. This point has not been argued, so it is concluded that destructive testing is necessary to answer the question. Nonetheless, the plaintiffs should notify the court if there is a dispute about this subject. Regarding factor (3) there are not any less prejudicial alternative methods to obtain the sought after evidence.

Regarding factor (4) there are adequate safeguards to minimize prejudice to the plaintiffs to present evidence at trial. These are included in the Order.

Accordingly, it is ORDERED:

1.    That defendant's motion to compel is GRANTED (Doc. 145).

2.    All destructive testing shall occur at locations to be determined by defendant, and at times mutually convenient to counsel and experts of the parties, except that testing shall occur between Monday and Friday during normal business hours and shall be concluded not later than April 23, 2010.

3.    Plaintiffs' counsel and plaintiffs' expert may be present for all destructive testing which is the subject of this order, and may video record or photograph as they deem appropriate. The defendant shall allow plaintiffs to complete their photography or video recording at each step of the destructive testing before beginning the next step of the testing procedure.

4.  Defendant need not submit any testing protocol or outline to plaintiffs in advance of, or during the testing, and bears no obligation to explain procedures during the course of the proposed testing.

5.  Plaintiffs' counsel and expert shall not interfere in any way during the course of the testing, including the solicitation of explanations.

6.  Defendant shall fully video record each test from its inception to its conclusion, including all handling of SID 10314 preliminary to each test, with photographic identification of any substance added to or placed upon SID 10314, if any there is.

7.  Plaintiffs shall deliver SID 10314 to defendants at a mutually agreeable time by a mutually agreeable method, but in no event later than three business days before the beginning date for testing.

8.  At the conclusion of testing defendant's expert(s) shall prepare a written report as required by F.R.Civ.P. 26(a)(2)(B).

9.  After the conclusion of the testing, plaintiffs may depose defendant's expert witness(es) and any other persons substantially involved in the performance of the testing. The deposition(s) shall be held at a mutually agreeable time and place, but not sooner than May 7, 2010 to allow the defense time to prepare its written reports, and not later than May 21, 2010, to allow plaintiffs time before trial to prepare for trial. This window of time can be modified by mutual agreement of the parties.

Dated this 6th day of April, 2010.

BY THE COURT:

s/John E. Simko

_____
John E. Simko
United States Magistrate Judge