UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES D. WHITE and<br>BRENDA WHITE, | ) <br>) <br>) | CIV. 06-4272-KES |
| Plaintiffs, | ) <br>) | ORDER DENYING PLAINTIFFS'<br>MOTION TO STRIKE |
| vs. | ) <br>) | DEFENDANT'S EXPERT<br>DAMAGES REPORTS |
| COOPER TOOLS, INC., | ) <br>) | |
| Defendant. | ) | |

Plaintiffs, James D. White (White) and Brenda White, move to strike the expert reports of Kenneth Boudreaux, Ph.D., Larry Stokes, Ph.D., and Matthew Monsein, M.D. Defendant, Cooper Tools, Inc., opposes the motion.

**BACKGROUND**

This is a personal injury case in which plaintiffs allege that White was injured because of a manufacturing defect in a chain, which was manufactured by defendant. Both parties have disclosed expert opinions regarding liability. Plaintiffs also disclosed the reports of two damages experts, Linda K. Graham, R.N., M.A., C.L.C.P. and George Langelett, Ph.D. Graham, a health care cost consultant, initially estimated that the total lifetime cost of White's injuries was $2,988,886. Docket 133, Ex. 1 at 12. On April 14, 2009, plaintiffs notified defendant that they would be asking Graham to amend her report to reflect changes in White's medications. Later in April 2009, plaintiffs conducted the trial depositions of White's psychologist, primary surgeon, treating physician,

and psychiatrist. On June 29, 2009, Graham completed an updated Health Care Cost Evaluation based on then-available information about White. In this updated report, Graham estimated that the total lifetime cost of White's injuries was $5,795,062. Docket 133, Ex. 2 at 13. The increase in the total lifetime costs reflects an increase in the cost of nursing services, medical services, and medications.

Dr. Langelett analyzed the economic loss to White due to his injuries. In Dr. Langelett's initial report, dated February 22, 2008, he estimated that the present value of White's total economic loss was $1,536,748.51. Docket 133, Ex. 5 at 6. On June 28, 2009, Dr. Langelett prepared an updated report in which he estimated the present value of White's total economic loss to be $7,015,980.04. Docket 133, Ex. 6 at 8. Dr. Langelett's updated estimate included the present value of medication, equipment, and medical expenses, none of which were included in his initial estimate. Plaintiffs disclosed Dr. Langelett's updated report to defendant on June 30, 2009. Defendant responded that Dr. Langelett's updated report reflected "quite a change in his opinion" and that defendant might designate a rebuttal expert or experts to address the assumptions of Dr. Langelett's report.

A pretrial conference was held on July 31, 2009.[1]  There was little discussion about damages experts at this hearing.  Plaintiffs indicated that the main issue in the case was liability.  Plaintiffs stated, "[t]here is no economist that defense has employed, no life care planner the defense has employed, no vocational rehabilitation expert the defense has employed."  Docket 154 at 77.  Defendant did not indicate any concerns about the updated reports of Graham and Dr. Langelett or state its intention to disclose its own damages experts.  There was a discussion, however, about new information provided by plaintiffs' liability expert the morning of the pretrial conference.  A week after the pretrial conference, plaintiffs disclosed a supplemental report from their liability expert introducing a new theory that the chain had failed due to excessive aluminum oxide inclusions in the steel used to make the chain.

On August 20, 2009, defendant moved the court to strike plaintiffs' new expert reports or, in the alternative, to continue the trial date to allow defendant to have its experts perform appropriate tests and issue supplemental reports on the excessive aluminum oxide inclusions theory, to evaluate a potential third-party complaint on the basis of plaintiffs' liability expert's new opinions, to conduct necessary discovery on plaintiffs' experts' new opinions,

---

[1] The Honorable Lawrence L. Piersol presided over the pretrial conference and issued the August 27, 2009, order denying defendant's motion to strike and granting defendant's motion for a continuance.  The case was transferred to the undersigned on December 11, 2009.

and to "consider a new expert or experts in the wake of new opinions from damages experts." Docket 130 at 1.

The court denied defendant's motion to strike but granted defendant's motion for a continuance on August 27, 2009. The order stated in full,

> Plaintiffs contend both that the new opinion from its liability expert, Lester Engel, should be admissible and the trial date should not be moved. The defense resists as this new theory was first raised at the Pre-Trial Conference on July 31, 2009. The Court does view Mr. Engel's opinion concerning a materials defect because of possible "excessive aluminum oxide inclusions" to be a new opinion. The Court does view the alternatives to be either not allowing this new theory to be presented at trial or to grant a continuance. The Court is reluctant to grant a continuance because this is one of the oldest cases on the Court's docket, having been filed in 2006. Despite that, this is a most serious case involving, as the Court sees it, a very large amount of claimed damages from serious injuries while on the other hand hotly contested issues concerning liability. Trials ultimately must be a search for the truth and it is because of that underlying basis that this Court grants a continuance so that additional discovery can be undertaken. The parties apparently both acknowledge the need for additional discovery if the continuance is granted, and the parties should advise the Court on the amount of time necessary for additional discovery. Additional discovery can also be taken by the defense of the two damage expert witnesses for the Plaintiffs as their damage figures have significantly increased. If the parties cannot agree on the issue of destructive testing of portions of the chain in question, then the respective positions should be presented to the Court. The Court advises as a preliminary matter that if it appears that destructive testing is warranted, then the question is by whom and with what protocols to be followed. Once an additional period of discovery has been established, the Court will then set a new trial date.

Docket 135. On December 17, 2009, the court issued an amended scheduling order setting the deadlines for "additional expert designations and reports," any

4

necessary rebuttal reports, and "any additional depositions deemed necessary by the parties." Docket 143.

Defendant disclosed expert reports from Dr. Boudreaux, an economist, Dr. Stokes, a rehabilitation counselor, and Dr. Monsein on January 20, 2010. Dr. Stokes's report was dated August 21, 2009. On January 22, 2010, plaintiffs asked that defendant withdraw these expert reports because the deadline to disclose damages experts had already passed and the parties had already taken video depositions of White's treatment providers. Defendant resisted plaintiffs' request. Plaintiffs filed the present motion to strike on April 8, 2010.

## DISCUSSION

Plaintiffs argue that the reports of defendant's proffered damages experts are untimely and prejudicial. Defendant argues that plaintiffs' motion to strike is untimely, that Dr. Boudreaux's, Dr. Stokes's, and Dr. Monsein's reports were timely disclosed, and that plaintiffs are not unfairly prejudiced by the disclosure of these reports.

Rule 26(a)(2) governs the mandatory disclosure of expert testimony. Under this rule, each party must disclose the identity of any expert witness it may use at trial, along with a written report prepared and signed by the witness, by the date ordered by the court or, in the absence of a court order, 90 days before trial. Fed. R. Civ. P. 26(a)(2). If the evidence is offered solely to contradict or rebut expert testimony offered by another party, however,

disclosure may be made up to 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(C)(ii). Each party also has an obligation to supplement information included in an expert's report or given during an expert's deposition "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Absent a court order directing otherwise, supplemental disclosures must be made at least 30 days before trial. Fed. R. Civ. P. 26(a)(3)(B), 26(e).

Here, the court originally ordered defendant to make its initial expert disclosures by March 28, 2008. Dockets 10 & 26. Based on a joint motion of the parties, the court ordered defendant to supplement its expert disclosures by May 1, 2008. Docket 39. After holding the pretrial conference and continuing the trial date, the court ordered the parties to disclose additional expert designations and reports by January 15, 2010. Docket 143.

The parties disagree over which deadline governs defendant's designation of its damages experts. Plaintiffs argue that defendant's deadline was March 28, 2008. Defendant argues that the January 15, 2010, deadline applies. The court finds that defendant's disclosure of Dr. Boudreaux's, Dr. Stokes's, and Dr. Monsein's reports was governed by the January 15, 2010, deadline. The court's amended scheduling order states that "additional expert designations and reports will be completed and filed by January 15, 2010." Docket 143. This order does not restrict these expert designations and reports to the topic of plaintiffs' excessive aluminum oxide inclusions theory. Further,

6

the court adopted the language and deadlines proposed by plaintiffs in their November 13, 2009, letter to the court. This letter stated that destructive testing would be completed by early December and indicated that the parties had agreed to certain deadlines for "[a]dditional expert designations and reports," rebuttal reports, and depositions. Docket 141. Despite the reference to destructive testing, the letter did not indicate that the parties' stipulation regarding additional expert designations and reports was limited to expert disclosures related to this testing.

Moreover, the court's August 27, 2009, order continuing the trial date and allowing for an additional period of discovery contemplated discovery on damages. The court explicitly stated that defendant was permitted to take discovery regarding plaintiffs' damages experts because these experts had significantly increased their estimates of White's damages since their initial reports. Plaintiffs assert that the court "unmistakably denied" defendant's request to disclose new damages experts. Plaintiffs' argument is unavailing. The August 27, 2009, order is silent on the matter of new expert designations and reports altogether, not just new expert designations on the topic of damages. Despite this silence, plaintiffs clearly interpreted the August 27, 2009, order as allowing new expert designations on the issue of liability. There is no principled way to read the August 27, 2009, order as allowing the parties to disclose new experts and reports regarding liability but not new experts and reports regarding damages. For these reasons, the court concludes that the

August 27, 2009, order does not preclude defendant from retaining expert witnesses to respond to Graham's and Dr. Langelett's updated estimates of White's damages. In light of the court's explicit recognition of defendant's right to conduct discovery regarding plaintiffs' damages estimation and the general language of the amended scheduling order, the court concludes that the amended scheduling order allowed defendant to designate damages experts and disclose their reports by January 15, 2010.

Defendant disclosed the reports of Dr. Boudreaux, Dr. Stokes, and Dr. Monsein on January 20, 2010. Defendant does not argue that these reports were supplemental or rebuttal reports subject to later deadlines.[2] Thus, even under the January 15, 2010, deadline, defendant's disclosures were untimely. Untimely disclosure of an expert opinion triggers Rule 37(c)(1) sanctions, including the exclusion at trial of testimony on undisclosed opinions. See Fed. R. Civ. P. 37(c)(1). These sanctions do not apply, however, if "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The trial court has great discretion in determining whether to strike expert testimony that is disclosed in contravention of the court's scheduling orders. See Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 285 (8th Cir. 1995). Here, defendant has not attempted to explain why it disclosed the

---

[2] Moreover, because full copies of the reports of Dr. Boudreaux, Dr. Stokes, and Dr. Monsein have not been provided to the court, the court cannot determine whether these reports qualify as rebuttal reports under Rule 26(a)(2)(C)(ii).

8

reports of Dr. Boudreaux, Dr. Stokes, and Dr. Monsein five days after the deadline. Thus, the court cannot find that the late disclosure was substantially justified.

The court does find, however, that the late disclosure was harmless. Plaintiffs should not be surprised by defendant's designation of damages experts. Defendant informed plaintiffs that it was considering whether to designate a rebuttal expert or experts to address the assumptions of Dr. Langelett's updated report shortly after plaintiffs disclosed this report on June 30, 2009. And on August 20, 2009, defendant moved for a continuance of the trial so that it could "consider a new expert or experts in the wake of the new opinions from damages experts." Plaintiffs had notice that defendant planned to consider whether to designate its own damages experts.

Further, plaintiffs are not unfairly prejudiced by defendant's late disclosure. Plaintiffs argue that defendant's disclosure of damages experts is prejudicial for several reasons, but none of these reasons relate to the five-day delay under the relevant deadline. Plaintiffs argue that they are prejudiced by defendant's late disclosure because they have already taken the trial depositions of White's psychologist, primary surgeon, treating physician, and psychiatrist and thus have lost the opportunity to discuss with these experts the issues and concerns raised by Dr. Boudreaux, Dr. Stokes, and Dr. Monsein. Plaintiffs argue that their trial depositions of White's treatment providers would have been different if plaintiffs had known of the opinions of

9

defendant's damages experts. But the court has found that defendant was permitted to designate new damages experts by January 15, 2010. The trial depositions were conducted in April 2009, long before defendant's additional expert designations were due under the amended scheduling order. Thus, defendant's five-day delay in disclosing the reports of Dr. Boudreaux, Dr. Stokes, and Dr. Monsein did not create the prejudice of which plaintiffs complain.

Further, the time line of events belies plaintiffs' argument of unfair prejudice. Plaintiffs conducted the trial depositions of White's treatment providers in April 2009. About two months after these depositions were conducted, plaintiffs disclosed Graham's and Dr. Langelett's updated reports, in which Graham increased her estimation of the total lifetime cost of White's injuries from $2,988,886 to $5,795,062, and Dr. Langelett increased his estimation of the present value of White's total economic loss from $1,536,748.51 to $7,015,980.04. Based on these increases, the court permitted additional discovery on the damages issue. Plaintiffs may wish to re-depose White's treatment providers based on the opinions expressed by defendant's damages experts, but defendant's designation of these experts is justified by the significant change in Graham's and Dr. Langelett's estimation of White's damages after the trial depositions were conducted. Further, it was plaintiffs' conduct in introducing a new theory of liability after the pretrial conference that necessitated the continuance of the trial and the reopening of

10

discovery in this case. Plaintiffs have not been unfairly prejudiced under these facts.

Moreover, the court finds that to the extent plaintiffs are prejudiced by defendant's late disclosure, this prejudice can be cured by allowing plaintiffs to re-depose White's treatment providers. It is unlikely that additional depositions would be overly burdensome in that defendant's damages experts were retained to address the assumptions in Graham's and Dr. Langelett's reports, rather than the opinions expressed by White's treatment providers. The topics that must be addressed by White's treatment providers are limited. Plaintiffs argue that defendant would get an unfair second chance to cross-examine plaintiffs' experts[3] if these experts were re-deposed. Plaintiffs can address this concern by limiting the scope of the additional depositions to the topics raised by defendant's damages experts or by making objections to the scope of defendant's inquiry on cross-examination. The trial in this case is scheduled for June 22, 2010. Plaintiffs have sufficient time to conduct additional trial depositions of White's treatment providers by that date.

Finally, plaintiffs argue that they have lost the opportunity to make a Daubert challenge to defendant's proffered damages experts. But plaintiffs have not attempted to make such a challenge, and defendant states that it

---

[3] It appears that plaintiffs use "experts" to refer to White's treatment providers.

11

would not object to plaintiffs' ability to make such a motion. Thus, plaintiffs have suffered no prejudice on this ground.

Overall, the court finds that Rule 37(c)(1) sanctions are not appropriate because defendant's five-day delay in disclosing the reports of Dr. Boudreaux, Dr. Stokes, and Dr. Monsein was harmless. In light of the history of this case, plaintiffs have not suffered unfair prejudice as a result of defendant's designation of damages experts on January 20, 2010, and any prejudice plaintiffs have suffered was not caused by defendant's failure to disclose the reports five days earlier. Accordingly, plaintiffs' motion to strike defendant's new expert disclosures as untimely and unfairly prejudicial is denied.[4]

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion to strike defendant's expert damages reports (Docket 157) is denied.

Dated May 10, 2010.

        BY THE COURT:

        */s/ Karen E. Schreier*
        KAREN E. SCHREIER
        CHIEF JUDGE

---

[4] Because plaintiffs' motion is denied on the merits, the court need not resolve defendant's claim that plaintiffs' motion was untimely.